IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Rasheena Eason, as Next Friend for D. E., a minor under the age of 14,<br><br>Plaintiff,<br>v.<br><br>The United States of America,<br><br>Defendant. | Civil Action No.: 3:18-2622-JMC<br><br><br>**COMPLAINT** |

The Plaintiff, Rasheena Eason (hereinafter, the "Plaintiff"), as parent and natural guardian of D. E., a minor, by and through the undersigned counsel, brings this Complaint against the United States and would respectfully show unto this Honorable Court:

**PARTIES**

1. The Plaintiff brings this action on behalf of and as the parent, natural guardian and Next Friend of the real party in interest, her son D. E., a minor under the age of 14. Plaintiff is in the process of seeking appointment as the Guardian *ad Litem* for her son D. E.

2. The Plaintiff is a citizen and resident of Richland County, South Carolina.

3. D. E. lives in Richland County with his mother, the Plaintiff.

4. The Defendant, United States of America, is the proper party to this action. This action is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§ 2671 to 2680, commonly referred to as the "Federal Tort Claims Act." Liability of the United States is predicated specifically on Title 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages for which this complaint is made, were proximately caused by the negligence, gross negligence, recklessness, willfulness, and other wrongful acts and/or omissions of employees of the United States of America, including

the Department of Health and Human Services, through the Eau Claire Cooperative Health Center d/b/a Waverly Women's Health Care, (hereinafter, "WWHC"), including its employee, Aboagye Agyenim- Boateng, M.D. (hereinafter, the "OB"), an obstetrician, and its medical, nursing and/or support staff, while acting within the course and scope of their employment, under circumstances where the United States of America, if a private person, would be liable to Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of South Carolina. Upon information and belief, at all material times, the OB was a physician licensed to practice medicine in the State of South Carolina and practicing the specialty of obstetrics in Richland County. The OB held himself out to the public as having specializing training, knowledge and experience to engage in the practice of obstetrics.

5. Upon information and belief, WWHC is a recipient of federal grant money from the United States Public Health Service pursuant to 42 U.S.C. § 254b, 254d, 256, and/or 256a. As such, pursuant to 42 U.S.C. §233(h), the United States Department of Health and Human Services has deemed WWHC and its employees and/or certain contractors or agents who are physicians or nurses to be employees of the federal government only for purposes of coverage under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq., effective for acts and omissions on or after January 1, 2008.

## JURISDICTION AND VENUE

6. This United States District Court has jurisdiction of this case because this action is brought pursuant to and in compliance with 28 U.S.C. §§1346(b), 2671-2680 et seq., commonly known as the "Federal Tort Claims Act," which vests exclusive subject matter jurisdiction of Federal Tort Claims Act litigation in the United States District Court.

7. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(e), as the United States is a Defendant, and the Plaintiff is domiciled in this District and Division. In

addition, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this cause of action occurred in the County of Richland in the State of South Carolina, which is within this District and Division.

8. The United States Department of Health and Human Services is an agency of the United States of America. The United States of America, Defendant herein, through its agency, the United States Department of the Health and Human Services, at all times material hereto, either owned, operated and controlled the health care facility WWHC, or said facility received monies from the United States Public Health Service pursuant to 42 U.S.C. § 254b, 254d, 256, and/or 256a, such that pursuant to 42 U.S.C. §233(h), the United States Department of Health and Human Services has deemed WWHC and its employees and/or certain contractors or agents who are physicians or nurses to be employees of the federal government for purposes of coverage under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et. seq.*

9. The United States, through its employees and/or contractors, including but not limited to the OB, provided prenatal, labor and delivery obstetrical care to the Plaintiff and her then unborn son, D. E., at and/or through WWHC. As such, the OB and other medical and nursing staff employed by WWHC had a physician-patient relationship or nursing-patient relationship with the Plaintiff and her unborn infant, D. E.  WWHC is located within and provides health care services to the public in the State of South Carolina, County of Richland.

10. Plaintiff pleads, pursuant to Title 28 U.S.C. §2672 and §2675(a), that the claims set forth herein were timely filed with and presented administratively to the Defendant's agency, the United States Department of Health and Human Services on May 9, 2017, within two years of the tortious acts and omissions which occurred during the birth of D. E.; and that such claims were neither granted not denied.

## FACTUAL ALLEGATIONS

11.     In 2014, the Plaintiff became pregnant and submitted herself for prenatal and obstetrical care and attention to the OB, an employee of WWCH, and therefore an employee of the United States of America for purposes of this litigation.

12.     In 2015 the OB attended the delivery of D. E. at Palmetto Health Baptist in Richland County, South Carolina and was the obstetrician responsible for management of the labor and delivery.

13.     D. E. was a healthy baby prior to the date when the Plaintiff was admitted to the hospital under the care of the OB.

14.     The OB assumed responsibility and took charge of the labor and delivery obstetrical care of the Mother and her then unborn son. The OB was responsible for the obstetrical management of labor and delivery related to the birth of D. E.

15.     During delivery the OB encountered an obstetrical condition known as "shoulder dystocia", during which the infant's head delivers but the body fails to deliver in normal fashion because one of the infant's shoulders (the "anterior" or top shoulder) encounters and remains lodged behind the pubic bone in the maternal pelvis, preventing such shoulder and the rest of the baby's body from delivering with normal, gentle traction.

16.     The OB failed to appreciate, failed to properly manage, and failed to take advantage of standard safe and effective obstetrical maneuvers to assist in the management and resolution of the shoulder dystocia without causing injury to the infant. Instead, the OB applied excessive force, traction and/or torsion when he pulled, bent down and/or twisted the head and neck of the infant in a misguided and erroneous attempt to resolve the shoulder dystocia.

17.   As a result of the excessive force, traction, pulling, bending down and/or torsion on D. E.'s head and neck, the OB caused significant, severe, and permanent injuries to D. E.'s brachial plexus nerves which exit the spinal cord near his anterior or top shoulder (those nerves which provide motor function to the muscles of the shoulder, arm and hand of the affected side). These injuries were foreseeable. Had the OB properly managed the shoulder dystocia in compliance with the applicable standard of care, D. E. would not have sustained his severe and permanent injuries, deformities and disabilities.

18.   As a direct and proximate result of the OB's failure to properly manage shoulder dystocia in compliance with the standard of care, D. E. has endured and will continue to endure severe and permanently debilitating injury; deformity; disability; physical pain and suffering; mental, emotional and psychological harm; limitations in his ability to engage in activities of daily living; loss of vocational options; reduction of earning capacity; loss of or reduced enjoyment of life; past and future medical, surgical and other health care expenses; and/or any additional losses, harms and damages as may be discovered during litigation and/or trial of this case.

**FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANT**
**(Minor's Cause of Action for Medical Negligence)**

19.   Plaintiff re-pleads the foregoing allegations set forth above, as if set forth verbatim, and incorporates the same herein by reference.

20.   The OB, the staff, agents, and employees of WWHC, and, therefore Defendant United States of America, owed the Plaintiff and her then unborn son a duty of providing obstetrical care, including labor and delivery care, nursing and support services consistent with generally accepted standards of care for their respective professions acting under the same or similar circumstances.

21. Defendant breached one or more of its duties of care to the Plaintiff and her son in a negligent, grossly negligent, reckless, willful and wanton manner and/or was otherwise wrongful in the labor and delivery obstetrical care and attention, nursing and support services provided to them. As a direct and proximate result, Desmond sustained severe injuries and damages as set forth above in Paragraph 18.

22. Defendant breached this duty of due care in one or more of the following particulars:

   a. Failing to acquire a reasonably safe level of knowledge, skill, and training about obstetrics generally, and the recognition and management of shoulder dystocia in particular, before attempting to manage the birthing process of D. E.; and/or

   b. Failing to appreciate the heightened risk of shoulder dystocia in this delivery; and/or

   c. Failing to timely recognize the signs and symptoms of shoulder dystocia; and/or

   d. Failing to respond properly and appropriately to the signs and symptoms of shoulder dystocia; and/or

   e. Failing and refusing to use the proper and safe maneuvers to resolve shoulder dystocia without injury to D. E.; and/or

   f. Using improper delivery technique; and/or

   g. Using improper and excessive force, traction, bending and/or torsion; and/or

   h. Mismanagement of labor and delivery; and/or

   i. Mismanagement of shoulder dystocia; and/or

   j. Failing to perform delivery by caesarean section and/or to convert to a caesarean section; and/or

   k. Failing to communicate with fellow health care team workers on a timely and accurate basis about matters of critical importance to the patient's health when the shoulder dystocia occurred; and/or

   l. Failing to timely and properly monitor, observe, record and/or transcribe vital information about the patient's status and condition; and/or

  m. Failing to provide nursing and support services to facilitate the safe resolution of shoulder dystocia and to effect delivery without causing brachial plexus nerve damage; and/or

  n. Such other failures to comply with the applicable standards of care as may be identified during discovery and the trial of this case.

23. As a direct and proximate result of the negligence and other wrongful conduct on the part of Defendant, D. E. has sustained certain injuries and damages as set forth in Paragraph 18 above for which Defendant has legal responsibility.

## FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANT
### (Cause of Action for Pre-Majority Medical Expenses and Related Damages)

24. Plaintiff re-pleads the foregoing allegations as full as if set forth herein verbatim and incorporates the same herein by reference.

25. Upon information and belief, current South Carolina law provides that when a minor is tortuously injured, the right to recover certain damages (such as the value of pre-majority medical care and loss of the minor's services), belongs to either the minor child, as the real party in interest, or the parent(s), so long as there is no duplicate recovery. Under federal case law in this District, the same principle has been long established.

26. As a direct and proximate result of the negligence and other wrongful conduct on the part of the Defendant, the Plaintiff, as Mother of the minor, has the right to recover individually for (a) the value of pre-majority tort-related medical care; (b) loss of the child's services; and (c) such further parental injuries, losses, and damages as may be revealed through discovery and trial of this case.

27. Nevertheless, Plaintiff desires to waive in favor of D. E. her parental right to claim and recover such damages, except as required to reimburse her actual personal expenses incurred

in providing extraordinary care for D. E. as a result of his birth injuries. To the extent allowed by applicable law, Plaintiff does hereby waive in favor of D. E. her parental right to claim and recover such damages. If for any reason this attempted waiver should be ineffective or otherwise disallowed, Plaintiff hereby asserts her parental rights in full to claim and recover damages as allowed by applicable law.

**WHEREFORE,** the Plaintiff seeks judgment against the Defendant for:

a. Actual and consequential damages;

b. The costs and disbursements of this action;

c. Such other and further relief as this Court deems just and proper

Respectfully Submitted,

**GRAHAM LAW FIRM, P.A.**

By:   s/ *Edward L. Graham*
Edward L. Graham   Federal ID # 2415
Post Office Box 550
Florence, S.C. 29503
egraham@grahamlawfirm.net
**Attorneys for Plaintiff**

Florence, South Carolina
September 26, 2018